IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE NEGRETE,

       Plaintiff,

vs.                                        No. CIV 06-0338 JB/LFG

MALOOF DISTRIBUTING L.L.C.,
A New Mexico Limited Liability Company,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant Maloof Distributing, L.L.C.'s Motion to Strike, filed October 2, 2007 (Doc. 114).  The Court held a hearing on the motion on October 9, 2007.  The primary issues are: (i) whether the Court should strike the affidavit of Eddie Montoya from the Plaintiff Jose Negrete's Response to Defendant Maloof Distributing L.L.C.'s motion for summary judgment; (ii) whether the Court should bar John Franco, Montoya, Randy Rodriguez, and Edmund Opoza from testifying at trial as previously undisclosed witnesses; and (iii) whether the Court should prohibit Negrete from raising a new claim for hostile environment at the summary judgment stage.  The Court will grant in part and deny in part Defendant's Motion to Strike.  The Court will not strike Montoya's affidavit from Negrete's Response to Maloof Distributing's Motion for Summary Judgment, although Montoya was designated as a witness and his affidavit executed after the discovery termination date in this case because the prejudice, if any, to Maloof Distributing is minimal and can be cured by Maloof Distributing taking Montoya's deposition.  The Court will not prohibit Montoya, Franco, Rodriguez, nor Opoza from testifying, because the prejudice, if any, to Maloof Distributing is minimal, can be cured by Maloof

Distributing taking their depositions, their testimony does not threaten disruption of the trial of this matter, nor is there any indication that Negrete or his counsel acted willfully or in bad faith . Maloof Distributing will be permitted, however, to take the depositions of Montoya, Franco, Rodriguez, and Opoza.  The Court will not permit Negrete to amend his Complaint to include a hostile work environment claim, because he did not allege a hostile work environment claim in accordance with the requirements of rule 8 of the Federal Rules of Civil Procedure and of the case law of the United States Court of Appeals for the Tenth Circuit, and because it is impermissible for him to raise a new claim in the briefing on the motion for summary judgment, because the addition of a new claim at this late date causes substantial prejudice to Maloof Distributing.

## PROCEDURAL BACKGROUND

On April 26, 2006,  Negrete filed his Complaint for Employment Discrimination, Violation of 42 U.S.C. § 1981, Breach of Express Contract, Breach of Implied Contract, and Prima Facie Tort against the Defendant, Maloof Distributing, L.L.C. ("Complaint").  See Doc. 1.  The Complaint stated in part:

> During the time that Plaintiff was employed by the Defendant, said Defendant discriminated against Plaintiff with respect to the terms, conditions and privileges of employment because of Plaintiff's race.
>
> The aforementioned discrimination consisted of dissimilar treatment from employees of another race; unfounded complaints made by Plaintiff's supervisor regarding theft.
>
> * * * *
>
> Defendant intentionally discriminated against Plaintiff on the basis of race in terminating his contract and in the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship with his employer.

Complaint ¶¶ 16, 17, 24, at 4-5.

On February 16, 2007, the parties filed the Initial Joint Status Report and Provisional

Discovery Plan.  <u>See</u> Initial Joint Status Report and Provisional Discovery Plan, at 1, filed Feb. 16,

2007 (Doc. 17).  On pages 2-5, Negrete summarized his contentions:

> During the time that Mr. Negrete was employed by Defendant, Maloof discriminated against Mr. Negrete with respect to the terms, conditions and privileges of employment because of his race-Hispanic. This discrimination consisted of Defendant making unfounded complaints against Mr. Negrete. Mr. Negrete was at all times material qualified to do his job.

> During the time that Mr. Negrete was employed by Defendant, there was a policy of only terminating employees for good cause, and progressive discipline, Defendant failed to follow its own policies and procedures in terminating Mr. Negrete and thus breached its express and implied contractual obligations with him.

Initial Joint Status Report and Provisional Discovery Plan at 4-5.  Again, Negrete did not include

an allegation of hostile work environment, but largely tracked the factual allegations he had made

in the Complaint.  Negrete also noted that he did not intend to file an amendment to his pleadings,

but the Court stated that it would allow him until March 15, 2007 to amend his pleadings.  <u>See</u>

Transcript of Hearing (taken Feb. 20, 2007) ("February 20, 2007 Tr.") at 3:17-19 (Court).

     Maloof Distributing  moved to dismiss Negrete's Complaint on May 22, 2006.  <u>See</u> Motion

to Dismiss, filed May 22, 2006 (Doc. 4).  Maloof Distributing argued that the Court should dismiss

Negrete's § 1981 claim for failing to exhaust with the Equal Employment Opportunity Commission

and that the Court should decline to exercise supplementary jurisdiction over Negrete's remaining

claims.  <u>See</u> Defendant's Memorandum in Support of Motion to Dismiss, filed May 22, 2006 (Doc.

5).  On October 17, 2006, the Court denied Maloof Distributing's Motion to Dismiss because

Negrete did not need to exhaust administrative remedies to seek relief under § 1981 in federal court.

<u>See</u> Memorandum Opinion and Order, filed Oct. 17, 2006 (Doc. 13).  Maloof Distributing answered

Negrete's Complaint on November 17, 2006.  <u>See</u> Answer to Complaint for Employment

Discrimination, Violation of 42 U.S.C. § 1981, Breach of Express Contract, Breach of Implied

Contract, and Prima Facie Tort, filed Nov. 17, 2006 (Doc. 15).

Maloof Distributing served Negrete with its First Set of Interrogatories and Requests for Production on February 27, 2007. See Certificate of Service, filed Feb. 27, 2007 (Doc. 18). Maloof Distributing's Interrogatory Number Two asked: "Please state with specificity the basis of your contention that during your employment with Maloof Distributing you were discriminated against by the company. Please identify each and every act individually, specifying date, time, location, the events that occurred, the individual who committed the complained of act and all parties present. Please identify with specificity any documents supporting your allegation." See Clerk's Minutes, filed Oct. 9, 2007 (Doc.118), Exhibit 1, Plaintiff Jose Negrete's Answers to "Defendant Maloof Distributing, L.L.C.'s First Set of Interrogatories to Plaintiff Jose Negrete," at 4. The following day Negrete served Maloof Distributing with his First Set of Interrogatories and Requests for Production. See Certificate of Service, filed Feb. 28, 2007 (Doc. 19). On the same day that Negrete served Maloof Distributing with his first discovery requests, Maloof Distributing served its initial disclosures on Negrete. See Certificate of Service, filed Feb. 28, 2007 (Doc. 20).

On March 22, 2007, Maloof Distributing served its Answers and Responses to Negrete's First Set of Interrogatories and Requests for Production. See Certificate of Service, filed Mar. 22, 2007 (Doc. 23). On April 11, 2007, Negrete served Maloof Distributing his Answers to its First Set of Interrogatories and First Requests for Production. See Certificate of Service, filed Apr. 11, 2007 (Doc. 24). Negrete answered Maloof Distributing's Interrogatory Number Two as follows:

> December 17, 2004. Plaintiff was fired because he didn't have paperwork for hot-shot delivery and alleged theft. However, Mike Falt delivered hot shot without papers on more than one occasion, but was not terminated or disciplined. Mike Falt has sent Plaintiff from one store to another to deliver beer without proper paper-work one week before, in December, 2004.
>
> Joe Samuels made remarks such as "damn Mexican" when Plaintiff and Samuels

-4-

would deliver beer for Maloof.   Joe Samuels would repeatedly remark "damn Mexican -- hurry up, you lazy Mexican, I want to go home as soon as I can." Beginning in January-February, 2004, Bill James would say "hey Mexican" when referring to Plaintiff and then tell him to complete various tasks.   Nobody else was present when he would make such remarks.

Bob Bolin refused to let Plaintiff go to mandatory Roswell, New Mexico meetings of Maloof employees.   He allowed white employees to go such as Mike Falt.

Jim Russell told Plaintiff on December 17, 2004 that he was going to do everything he could to get Plaintiff charged with a felony.   He refused to listen to Plaintiff's explanation.

Merchandiser Mark [last name unknown] received a key to the Clovis, New Mexico Maloof office immediately upon his employment with Maloof's.   He used the office to wait.   However, Plaintiff had worked for Maloof's two years and had no key.   He would wait for someone to open the office.

Mauruo Martinez, of Roswell, New Mexico, told Plaintiff in 2003 that he wasn't making what a Maloof truck driver was supposed to be making and finally given a raise.   Plaintiff believes that at times he was making less than other similarly situated drivers for Maloof's.

November-December, 2003, Plaintiff spoke to Mike Falt, Assistant Manager in Clovis, New Mexico about how Plaintiff was being spoken to by Joe Samuels repeatedly remarking "damn Mexican -- hurry up you lazy Mexican, I want to go home as soon as I can."   Mike Falt said he was going to speak to Samuels.   Plaintiff spoke to Sergio Lopez, a supervisor about the problems with Joe Samuels and he told me he would speak with Mike Fault.

Plaintiff requested an employee hand-book from his supervisor Bill James at the time he was hired in approximately July 15, 2002.   Bill James said "you can't read" and refused to provide any sort of hand-book or other employee policies to Plaintiff. Plaintiff can in fact read.   Bill James referred to another Hispanic employee by the name of Eric [last name unknown] as a "punk" in my presence and on many occasions.   He did not refer to white employees in such a manner.

Plaintiff in the winter of 2004 was requested to undergo a random drug test in Roswell, New Mexico.   Plaintiff was required to provide a urine test along with a hair sample.   However, other employees were only required to give a urine sample without a hair sample. Mike Falt told Plaintiff that Maloof's was not supposed to do that.

Joe Samuels was not prosecuted by Maloof for allegedly stealing beer on December 17, 2004.   While Samuels was fired, he unlike Plaintiff had prior write ups.

-5-

See Exhibits 1 through 7 attached to Plaintiff's initial disclosures. See Exhibit 8 attached hereto.

Id. at 4-6.

Negrete served his second Request for Production of Documents on June 11, 2007. See Certificate of Service, filed June 11, 2007 (Doc. 33). Maloof Distributing also submitted to Negrete its second set of production requests. See Certificate of Service, filed June 18, 2007 (Doc. 37). Maloof Distributing responded to Negrete's second requests for production on July 10, 2007. See Certificate of Service, filed July 10, 2007 (Doc. 38). Maloof Distributing also supplemented its initial disclosures to Negrete. See Certificate of Service, filed July 12, 2007 (Doc. 39).

Pursuant to the Court's Scheduling Order, the termination date for discovery was set for July 16, 2007. See Scheduling Order, at 1, filed May 2, 2007 (Doc. 27) ("This deadline shall be construed to require that discovery be completed on or before the above date.")(emphasis in the original). "Pretrial motions, other than discovery motions, shall be filed with the Court and served on opposing party by August 16, 2007." Id. at 2.

Negrete took the depositions of two witnesses after the expiration of the discovery deadline of July 16, 2007. See id. ¶ 2, at 1. One witness' deposition had been scheduled before the expiration of the deadline, but the witness asked to reschedule the deposition. See id. ¶ 3, at 1. The second witness, Joe Samuels, could not be located by either party until August of 2007. See id.

On August 13, 2007, Negrete's counsel emailed Maloof Distributing's counsel and asked to identify two additional witnesses. See id. ¶ 5, at 1. Maloof Distributing was consulted and opposed the additional witnesses. See id. ¶ 6, at 1.

On August 16, 2007, Maloof Distributing moved for summary judgment and requests that the Court dismiss all of Negrete's claims with prejudice. See Defendant Maloof Distributing

L.L.C.'s Motion for Summary Judgment ("Maloof Distributing summary judgment motion"), filed Aug. 16, 2007 (Doc. 44). To that motion, Maloof Distributing attached a memorandum and exhibits. See Maloof Distributing summary judgment motion, Defendant Maloof Distributing, L.L.C.'s Memorandum in Support of its Motion for Summary Judgment ("Maloof Distributing's Memo."), filed Aug. 16, 2007 (Doc. 44-2); Maloof Distributing summary judgment motion, Exhibits A through O.

On August 31, 2007, Negrete submitted an unopposed motion for extension of time, see Unopposed Motion to Extend Time to File a Response Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed Aug. 31, 2007 (Doc. 46), which the Court granted. See Stipulated Order Extending Time to File a Response Memorandum in Opposition to Defendant's Motion for Summary Judgment, filed Sept. 4, 2007 (Doc. 47). The parties submitted a request to the Court that Negrete be allowed to exceed the twenty-four page limit set forth in D.N.M.LR-Civ. 7.7, and that Negrete be allowed to attach exhibit pages in excess of the fifty pages allowed pursuant to D.N.M.LR-Civ. 10.5. See Stipulated Motion Relating to Page Numbers of Response Memorandum to Motion for Summary Judgment, filed Sept. 17, 2007 (Doc. 51). The Court entered a stipulated order allowing Negrete to submit a response memorandum to Maloof Distributing's summary judgment motion that could be in excess of twenty-five pages, but not to exceed forty pages. See Stipulated Order Allowing Plaintiff's Response Memorandum Brief in Opposition to Defendant's Memorandum in Support of its Motion for Summary Judgment, filed Sept. 25, 2007 (Doc. 111).

Negrete submitted his Response to Maloof Distributing's summary judgment motion on September 17, 2007. See Plaintiff Jose Negrete's Response to "Defendant Maloof Distributing, L.L.C.'s Motion for Summary Judgment ("Negrete's Response"), filed Sept. 17, 2007 (Doc. 52).

Negrete also submitted a memorandum in support of his Response.  See Plaintiff Jose Negrete's Response Memorandum in Opposition to Defendant's Memorandum in Support of Its Motion ("Negrete's Response Memo."), filed Sept. 17, 2007 (Docs. 53-103).  Negrete also submitted exhibits in an appendix.  See Appendix, filed Sept. 19, 2007 (Docs. 106-109).  Negrete used an affidavit to support his Response to Maloof Distributing's summary judgment motion of one of the undisclosed witnesses.  See id. ¶ 7, at 2; Negrete's Response, Exhibit 7, Affidavit of Eddie Montoya (executed Aug. 29, 2007) (Doc. 108-19).

Maloof Distributing replied to Negrete's Response on October 2, 2007.  See Defendant Maloof Distributing, L.L.C.'s Reply to Plaintiffs Response to Defendant's Motion for Summary Judgment ("Maloof Distributing's Reply"), filed Oct. 2, 2007 (Doc. 112).  Maloof Distributing notified the Court that briefing was complete on Maloof Distributing's summary judgment motion on October 2, 2007.  See Notice of Completion, filed Oct. 2, 2007 (Doc. 113).

On October 2, 2007, Maloof Distributing moved to strike an affidavit from Negrete's Response to its motion for summary judgment and asked the Court to prohibit the testimony of four potential witnesses.  See Defendant Maloof Distributing, L.L.C.'s Motion to Strike ("Maloof Distributing's motion to strike"), filed Oct. 2, 2007 (Doc. 114).  Maloof Distributing also objects to Negrete's Witness and Exhibit list that he filed identifying four previously undisclosed witnesses: Montoya, Franco, Rodriguez, and Opoza.  See id. ¶ 8, at 2; Plaintiff's Witness and Exhibit List, at 2-3, filed Sept. 17, 2007 (Doc. 69).  Maloof Distributing also argues that Negrete made new allegations of hostile work environment which he had not previously plead.  See Maloof Distributing's motion to strike ¶ 9, at 2; Negrete's Response, at 4, 6, 11, 13, 18-21, 33-36.  Maloof Distributing's counsel represents that he attempted to obtain Negrete's position on this motion via email and telephone, but was unable to do so.  See Maloof Distributing's motion to strike ¶ 10, at

2.  Maloof Distributing also filed a memorandum in support of its motion to strike.  See Defendant Maloof Distributing, L.L.C.'s Memorandum in Support of its Motion to Strike ("Maloof Distributing's motion to strike memo."), filed Oct. 2, 2007 (Doc. 114-2).

Negrete responded to Maloof Distributing's motion to strike on October 8, 2007.  See Plaintiff Jose Negrete's Response to "Defendant Maloof Distributing, L.L.C.'s Motion to Strike" ("Negrete's Response to motion to strike"), filed Oct. 8, 2007 (Doc. 115).  Negrete admits that Maloof Distributing's allegations contained within paragraphs 1-7, 10, and 11, of its motion to strike are true.  See Negrete's Response to motion to strike ¶ 1, at 1.  Negrete admits most of paragraph 3 of Maloof Distributing's motion to strike, but argues that he provided the address for Joe Samuel in July of 2007.  See Negrete's Response to motion to strike ¶ 2, at 1.  Paragraph 3 of Maloof Distributing's motion to strike states: "The deposition of one of these witnesses had been scheduled prior to the expiration of the deadline, however, the witness asked to reschedule the deposition. The second witness, Joe Samuels had been identified, however, could not be located by either party until August of 2007."  Maloof Distributing's motion to strike ¶ 3, at 1.  Negrete admits paragraph 8 of Maloof Distributing's motion to strike, but argues that he provided the names of Eddie Montoya and Randy Rodriguez before Maloof Distributing took Samuels' deposition on August 31, 2007.  See Negrete's Response to motion to strike ¶ 3, at 1.  Paragraph 8 of Maloof Distributing's motion to strike states: "Plaintiff filed a Witness and Exhibit List identifying four (4) previously undisclosed witnesses; namely John Franco, Eddie Montoya, Randy Rodriguez, and Edmund Opoza."  Maloof Distributing motion to strike ¶ 8, at 2.  He argues that Maloof Distributing had an opportunity to depose Montoya and Rodriguez, but failed to do so.  See id.  Negrete contends that John Franco was one of Maloof Distributing's Roswell warehouse employees and, therefore, was well known to Maloof Distributing.  See id.  Negrete also contends that Opoza gave a statement to Clovis Police

on behalf of Maloof Distributing on December 17, 2004, and is a current Maloof Distributing employee. <u>See</u> <u>id.</u> Negrete denies the allegations contained in paragraph 9 of Maloof Distributing's motion to strike. <u>See</u> <u>id.</u> ¶ 4, at 2. Paragraph 9 of Maloof Distributing's motion to strike states: "In support of his opposition to Defendant's Motion for Summary Judgment, Plaintiff made new allegation of hostile work environment, not previously plead[.]" Maloof Distributing's motion to strike ¶ 9, at 2.

Negrete contends that he "alleged hostile work environment in paragraph 16, 17, and 24 and the Initial Joint Status Report and Provisional Discovery Plan." <u>Id.</u> Negrete argues that "the issue of racial discrimination in the work place was plead several times so as to put the Defendant on notice." Plaintiff's Response Memorandum to "Defendant Maloof Distributing, L.L.C.'s Motion to Strike" ("Negrete's Response Memo."), filed Oct. 8, 2007 (Doc. 116). Negrete contends that, because Sergio Lopez, Joe Samuels, and himself, all testified regarding the discriminatory environment at Maloof Distributing during their depositions, substantial discovery has occurred regarding hostile work environment. <u>See</u> <u>id.</u> at 6-7.

The Court held a hearing on this matter on October 9, 2007. Maloof Distributing noted that the deposition of a former Maloof Distributing employee named Billy John James, had been scheduled before the expiration of the discovery deadline, but that the deponent had been unable to attend the deposition because he was badly injured. <u>See</u> Transcript of Hearing (taken Oct. 9, 2007)("Tr.") at 3:2-9 (Mower).[1] Maloof Distributing explained that both Negrete and it had been looking for Samuels, and that Negrete's counsel located him in Dexter, New Mexico. <u>See</u> Tr. at 3:14-16 (Mower). Maloof Distributing represented that, after Samuels was located, his and James'

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

depositions were rescheduled.  See Tr. at 3:14-17 (Mower).  Maloof Distributing admitted that Montoya's name had been disclosed three days before its filing of its summary judgment motion. See Tr. at 5:14-19 (Court & Mower).

Negrete represented that he first became aware that Montoya and Rodriguez had information pertinent to the case was on August 13, 2007.  See Tr. at 11:14-15 (Dixon).  Negrete represented that he notified opposing counsel that he would not object if Maloof Distributing wants to take depositions of Montoya or Rodriguez.  See Tr. at 11:15-17 (Dixon).  Negrete's counsel indicated that,  pending approval of the Court, the offer to take the depositions of Montoya or Rodriguez is still open to Maloof Distributing.  See Tr. at 11:18 (Dixon).  Negrete represented that he identified by name Montoya and Rodriguez to Maloof Distributing as soon as he became aware of them.  See Tr. at 11:21-23 (Dixon).

Negrete contends that he put Maloof Distributing on notice of his hostile environment by how he responded to Maloof Distributing's interrogatory of in March, 2007, that asked him to explain how he was discriminated against during his employment.  See Tr. at 14:2-8 (Dixon). Negrete responds that he indicated in that answer that Joe Samuels had made disparaging remarks, and that he had to undergo a drug test.  See Tr. at 14:5-7 (Dixon).

The Court held a pretrial conference on October 31, 2007.  The trial has a firm setting for December 3-7, 2007 in Roswell, New Mexico.  At the pretrial conference, Maloof Distributing sought permission to take the depositions of all four witnesses that Negrete identified after the discovery deadline.  See October 31 Tr. at 6:12-18 (Court & Mower).  Negrete sought to amend his complaint to add a claim for hostile environment.  See Transcript of Hearing (taken Oct. 31, 2007) ("October 31 Tr.") at   8:16-19 (Dixon). Maloof Distributing opposed the amendment and postponement of the trial.

## LAW REGARDING DISCLOSURES

Rule 26(a)(1)(A) states a " party must, without awaiting a discovery request, provide to other parties: [ . . . ] the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information." Fed. R. Civ. P. 26(a)(1)(A). See Watson v. United States, 485 F.3d 1100, 1108 (10th Cir. 2007) ("Generally all witnesses, regardless of their status, must be identified, with their contact information, in a party's Rule 26(a)(1)(A) disclosures."). Rule 37(c) lists the sanctions available for violation of rule 26(a). Rule 37(c)(1) of the Federal Rules of Civil Procedure provides:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

Fed. R. Civ. P. 37(c)(1).

"Notwithstanding Rule 37(c), the district court may be found to have abused its discretion if the exclusion of testimony results in fundamental unfairness in the trial of the case." Orjias v. Stevenson, 31 F.3d 995, 1005 (10th Cir.1994).

### 1.      Smith v. Ford Motor Co. Factors.

"The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." Trujillo v. Bd. of Educ. of Albuquerque Public Schools, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2363147, at *3 (D.N.M. June 27,

2007)(Browning, J.). "[T]he following factors should guide its discretion: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." Id. (citing Smith v. Ford Motor Co., 626 F.2d 784, 797 (10th Cir.1980)).

### 2. Prejudice or Surprise to the Party Against Whom the Testimony is Offered.

In Smith v. Ford Motor Co., the Tenth Circuit held that the defendant was prejudiced by the introduction of testimony by an expert during trial that was not adequately described or disclosed before trial. See 626 F.2d at 797. The important nature of the expert's testimony in Smith v. Ford Motor Co. prejudiced the defendant because, if the plaintiff had disclosed the expert testimony accurately before trial, it could have taken his deposition, discovered an article upon which the expert relied for his testimony, and been well prepared to cross-examine the expert at trial about his conclusions. See id. at 798. On the other hand, there was no prejudice or surprise when the plaintiff was aware of experts' testimony because one had been designated two weeks before trial, she received a summary of both experts' reports before their trial testimony, both were available for discovery before testifying, and the plaintiff chose to depose only one of the experts. See Moss v. Feldmeyer, 979 F.2d 1454, 1459 (10th Cir. 1992). The timing of the introduction of testimony "in relation to commencement of trial is an important element in analyzing whether [it] would cause prejudice or surprise." Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1210-11 (10th Cir. 2002).

### 3. Ability to Cure the Prejudice.

"Closely related to the prejudice and surprise factor is whether the opposing party had the ability to cure any prejudice or surprised caused . . . ." Davey v. Lockheed Martin Corp., 301 F.3d

at 1211.  In Smith v. Ford Motor Co., the defendant's ability to cure prejudice was significantly impaired, because the expert was scheduled to depart the day following his testimony and the expert used an empirical study not disclosed to the defense in advance of trial.  See 626 F.3d at 799.  The Tenth Circuit stated that, even if the defendant had asked for a continuance, given the expert's appointment the following day in another city and the nature of his testimony, it would be difficult to cure the prejudice to the defense.  See id. at 799.  On the other hand, the plaintiff's ability to cure prejudice in Moss v. Feldmeyer was not significantly impaired where the plaintiff had over two weeks to prepare for one expert's testimony and eight days to prepare for the others, and also had their respective reports.  See Moss v. Feldmeyer, 979 F.2d at 1459.

**4.     The Extent to Which the Introduction of Newly Disclosed Testimony Would Disrupt the Trial.**

In Smith v. Ford Motor Co., the Tenth Circuit held that testimony of an expert in the midst of trial threatened a significant disruption, because it prevented an adjournment under the circumstances, and proper rebuttal and impeachment "would have required the consultation of other experts, and perhaps, enlistment of new personnel or empirical data." 626 F.2d at 799.  On the other hand, no disruption of trial was threatened when the defendants' experts and reports were made available to the plaintiff before their testimony.  See Moss v. Feldmeyer, 979 F.2d at 1459.  There was also no disruption of trial threatened by the defendant introducing a new defense, and seeking to amend a pretrial order to include that defense, because the motion to amend was made prior to trial.  See Davey v. Lockheed Martin Co., 301 F.3d at 1212.  Although a continuance may have been necessary so the plaintiff could conduct discovery on that defense, and "re-deposing witnesses on the limited issue of [the defense] would not have been a lengthy process."  Id.

-14-

### 5.    The Moving Party's Bad Faith or Willfulness.

While bad faith or willfulness "may prove aggravated circumstances, this would not necessarily create greater prejudicial impact than a negligent act not in conformity with pretrial procedure." Smith v. Ford Motor Co., 626 F.2d at 799-800. Untimeliness can weigh against the party that violated a pretrial rule. See Davey v. Lockheed Martin Corp., 301 F.3d at 1212. The behavior of plaintiff's counsel bordered on bad faith because he refused to give explicit answers in front of the defense regarding whether the newly disclosed witnesses' testimony would be relevant to the case. See Burks v. Oklahoma Pub. Co., 81 F.3d 975, 979 (10th Cir. 1996).

The Tenth Circuit has upheld a district court's refusal to allow a plaintiff to add a co-worker witness to her witness list eight work days before trial -- although the first two Smith v. Ford Motor Co. weighed in favor of the plaintiff -- because the last two factors weighed in favor of the defendant, and thus, overall, the district court did not abuse its discretion in refusing to allow that witness to testify at trial. See Burks v. Oklahoma Publishing Company, 81 F.3d 975, 979-980 (10th Cir. 1996).  In Burks v. Oklahoma Publishing Company, there was no prejudice because the co-worker's proposed testimony would not have introduced any new issues and, if there was surprise or prejudice, the defendants could have easily cured it because the proposed witness was one of defendant's employees whom they could have interviewed or deposed without difficulty. See Burks v. Oklahoma Publishing Company, 81 F.3d at 979. The plaintiff, however, gave conflicting representations to the district court regarding her failure to add witnesses in a timely fashion to her witness list.  See id.  Initially, she represented that she did not know the importance of her new witnesses because discovery had not yet been completed.  See id.  Later, in the district court, and again on appeal, [the plaintiff] asserted that the names were not added to the witness list through simple inadvertence." Id.  The Tenth Circuit found "[s]uch inconsistent statements may be taken

as evidence that counsel made a conscious decision to act as he did." Id.  Ultimately, "[i]n

consideration of all the factors" the Tenth Circuit held "that the district court did not abuse its

discretion in refusing to allow [the plaintiff] to add the co-worker to her witness list." Id. at 980.

## RULE 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the requirements for claims of

relief:

> A pleading which sets forth a claim for relief, whether an original claim,
> counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain
> statement of the grounds upon which the court's jurisdiction depends, unless the
> court already has jurisdiction and the claim needs no new grounds of jurisdiction to
> support it, (2) a short and plain statement of the claim showing that the pleader is
> entitled to relief, and (3) a demand for judgment for the relief the pleader seeks.
> Relief in the alternative or of several different types may be demanded.

Fed. R. Civ. P. 8(a).  Rule 8(f) further instructs that: "All pleadings shall be so construed as to do

substantial justice." Fed. R. Civ. P. 8(a)(f).  "The need at the pleading stage for allegations plausibly

suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2)

that the 'plain statement' possess enough heft to 'sho[w]' that the pleader is entitled to relief.'" Bell

Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1966 (2007).  "Rule 8(a)(2) still requires a 'showing,'

rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the

complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair

notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. at 1965 n.3.

The Tenth Circuit rejects "the theory that the pleading of a claim under oath, apart from

equitable considerations which may be deemed in reason to operate as an estoppel to conduct,

irrevocably freezes the contention of the pleader so that under no circumstances may he [or she] alter

his [or her] view in that, or another, case, or assert an inconsistent position.  This would not be in

keeping with the spirit of Federal Rules of Civil Procedure . . . ." Parkinson v. California Co., 233

F.2d 432, 438 (10th Cir. 1956). See Erickson v. Pardus, 127 S.Ct. 2197, 2197, 2200 (2007)(holding

that the Tenth Circuit's dismissal of a pro se prisoner's complaint for alleged Eighth Amendment

violation for deliberate indifference to his serious medical needs was in error because the complaint

was sufficient to satisfy rule 8(a)(2) when he alleged that the prison doctor's decision to remove him

from his hepatitis C medication was endangering his life, that the medication was withheld after he

had started a one-year treatment program, and that the prisoner was still in need of treatment but was

still being refused treatment.); Johnson ex rel. Estate of Cano v. Holmes, 377 F.Supp.2d 1084, 1087-

88, 1096 (D.N.M. 2004)(Browning, J.)(holding that the plaintiff's factual allegations in his amended

complaint were sufficient to put the defendants on notice of facts that would entitle the plaintiff to

relief when the plaintiff pled that the defendants had failed to comply with the Adoption Assistance

and Child Welfare Act, without specifying which provision of the Act he was relying upon for his

claim that the defendants violated it, but explaining that he believed the defendants violated that Act

because they allegedly did not report known of suspected instances involving abuse of a child.).

On the other hand, the court must ensure that new claims and theories are not added on the

eve of trial. See Hodges v. City and County of Denver, No. 07-1011, 2007 WL 1519875, at *1 (10th

Cir. May 25, 2007)(holding that complaint was insufficient under notice pleading requirements of

the Federal Rules of Civil Procedure where the plaintiff failed to identify any policy or custom on

the part of the City & County of Denver that lead to any injury, and failed to identify any other

defendants by name or occupation, and "merely identified 'A lot of the Defendants were Stash from

my Site' as additional named defendants . . . ."); Mountain View Pharmacy v. Abbott Laboratories,

630 F.2d 1383, 1386 (10th Cir. 1980)(holding that complaint was properly subject to dismissal when

it did little more than recite the relevant anti-trust laws and failed to allege any specific act by any

defendant concerning any drug upon which injury to any plaintiff was based); Coopersmith v.

-17-

Supreme Court, 465 F.2d 993, 994 (10th Cir. 1972)(holding that a complaint failed to satisfy rule 8(a)(2) when it named the Supreme Court of Colorado, Court of Appeals State of Colorado, District Court, Grand County, State of Colorado, and Colorado Bar Association, a corporation as the defendants for an action under the Civil Rights Act, 42 U.S.C. §§ 1983, 1985, and 1986, because those defendants are not persons as contemplated within those statutes). When a district court confronts claims appearing for the first time in a pretrial order, "it must consider whether to approve or deny what is obviously an attempt to amend the pleadings at a rather late date." Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. 461, 464 (10th Cir. 2005). Claims or defenses should not normally appear in the first pretrial order, because "such a practice deprives one's adversary of fair notice, possibly discovery, and the opportunity for motion practice, and is subject to abuse by those who employ a sporting theory of justice." Id. (internal quotations omitted). See Wilson v. Muckala, 303 F.3d 1207, 1215 (10th Cir. 2002)(stating that a court does not "normally expect to see claims or defenses not contained in the pleadings appearing for the first time in the pretrial order, especially in such cursory form.").

In Shuab v. Newton Wal Co./UCAC, the Tenth Circuit found the plaintiffs' allegation that the defendants allowed the creation of "an intimidating, hostile and offensive environment" in their state-law claim for negligent hiring was insufficient to give notice to the defendants that they intended to bring a hostile environment claim. Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. at 464. The Tenth Circuit found "no allegations suggesting that the Plaintiffs worked in an environment permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive that it altered their employment conditions and created an abusive working environment." Id. (internal quotations omitted). Further, "the liberal construction . . . accorded a pleading does not require courts to fabricate a claim that a plaintiff has not spelled out in his pleadings." Id. (quoting

-18-

Maniccia v. Brown, 171 F.3d 1364, 1367 n.1 (11th Cir. 1999)).  The Tenth Circuit rejected the

plaintiffs' contention that inclusion of a hostile work environment claim in the pretrial report gave

the defendant sufficient notice of that claim.  See Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx.

at 465.

**LAW ON CLAIMS FOR DISCRIMINATION
AND HOSTILE WORK ENVIRONMENT**

The case law has made clear that claims for discrimination under § 1981 and claims of

hostile-work environment are difficult claims with distinct elements and distinct proof.  Hostile

environment claims are not a subset of discrimination claims.  Accordingly, an allegation of

discrimination does not give fair notice of a hostile environment claims.

     **1.**       **Discrimination Claims.**

To make a claim under 42 U.S.C. § 1981, a claimant must show that a defendant

intentionally or purposefully discriminated against him or her.  See Reynolds v. Sch. Dist. No. 1,

Denver, Colorado, 69 F.3d 1523, 1532 (10th Cir. 1995).  "Section 1981 prohibits racial

discrimination in 'the making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'"  Id.

(quoting 42 U.S.C. § 1981).  "To establish a prima facie case of termination on the basis of race, a

plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the job and

was performing the job satisfactorily; and (3) he was terminated under circumstances giving rise to

an inference of discrimination."  Martin v. Central States Emblems, Inc., 150 Fed.Appx. 852, 858

(10th Cir. 2005).  See Lindsey v. Thompson, No. 06-7114, 2007 WL 2693970, at *2 (10th Cir. Sept.

10, 2007)(holding that the plaintiff failed to state a claim under § 1981, because there was no

allegation that the defendants intentionally discriminated against him on the basis of race); Gonzalez

-19-

v. United States Air Force, 88 Fed.Appx. 371, 378 (10th Cir. 2004)(holding that a plaintiff failed to state a claim under § 1981 because she was suing the military but military acts are under "color of federal rather than state law" and nowhere did the plaintiff allege she was discriminated against on the basis of her race).

In Trujillo v. Bd. of Educ. of the Albuquerque Pub.Sch., No. CIV 02-1509 JB/RLP, 2006 WL 4079033 (D.N.M. June 9, 2006)(Browning, J.), the plaintiff's Count I of her complaint alleged her employment application was rejected "in favor of a less-qualified non-Hispanic male" and that there was "discrimination by virtue of Plaintiff's national origin, Hispanic (Puerto Rican) and sex, female . . . ." Trujillo v. Bd. of Educ. of the Albuquerque Pub.Sch., 2006 WL 4079033, at *1(emphasis in the original). The plaintiff's Count II alleged § 1981 discrimination and incorporated Count I by reference. See id. The plaintiff contended "that she intended to assert race as grounds for her § 1981 claims." Id. at *5 (internal quotations omitted). The plaintiff explained "that she used the words 'Hispanic (Puerto Rican),' and alleged that her job application was rejected 'in favor of a less-qualified non-Hispanic male,' to indicate the racial nature of the alleged discrimination." Id. The Court concluded that the plaintiff had "sufficiently stated a claim for racial discrimination." Id. "It is reasonable to infer that [the plaintiff] based her § 1981 claim and punitive damages on this alleged act of racial discrimination, just as she did for her Count I claim." Id. The plaintiff's language referencing "unlawful treatment because of her ethnicity as an Hispanic" fit within § 1981. Id.

### 2.    Hostile-Work Environment Claims.

"To establish a prima facie case of hostile work environment harassment, a plaintiff must show that 'under the totality of circumstances [i] the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and [ii] the harassment was racial or

stemmed from racial animus.'" <u>Bloomer v. United Parcel Serv., Inc.</u>, 94 Fed.Appx. 820, 825 (10th

Cir. 2004)(quoting <u>Witt v. Roadway Express</u>, 136 F.3d 1424, 1432 (10th Cir. 1998).  <u>See</u> <u>Mitchell</u>

<u>v. City and County of Denver</u>, 112 Fed.Appx. at 671(internal quotations omitted)("Under § 1981,

a prima facie case of racial harassment/hostile work environment requires [a showing that] 'under

the totality of circumstances [i] the harassment was pervasive or severe enough to alter the terms,

conditions, or privilege of employment, and [ii] the harassment was racial or stemmed from racial

animus.).

In 2002, the Supreme Court of the United States held that a complaint in an employment

discrimination lawsuit need not contain specific facts establishing a prima facie case under the

<u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) standard, but rather a "short and plain

statement of the claim showing that the pleader is entitled to relief." <u>Swierkiewicz v. Sorema N.A.</u>,

534 U.S. 508, 509 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).  The Court explained:

> This case presents the question of whether a complaint in an employment
> discrimination lawsuit must contain specific facts establishing a prima facie case of
> discrimination under the framework set forth by this Court in <u>McDonnell Douglas</u>
> <u>Corp v. Green</u>, 411 U.S. 792 . . . .  We hold that an employment discrimination
> complaint need not include such facts, and instead must contain only a short and
> plain statement of the claim showing that the pleader is entitled to relief.

<u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. at 508 (internal citations and quotations omitted). Justice

Thomas noted for the Supreme Court that the prima facie case under <u>McDonnell Douglas</u> "is an

evidentiary standard, not a pleading requirement." <u>Id.</u> at 511.

Justice Thomas explained that this pleading rule was proper; "under a notice pleading

system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case

because the <u>McDonnell Douglas</u> framework does not apply in every employment discrimination

case." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. at 512.  The Supreme Court reiterated that a short

and plain statement "must simply give the defendant fair notice of what the defendant's claim is and the grounds upon which it rests." Id. at 513. The Supreme Court noted that "[r]ule 8(a)'s simplified pleading standard applies to all civil actions . . . ." Id. at 514. Justice Thomas explained for the Supreme Court that, if a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant may move for a more definite statement or move for summary judgment under rule 56 if a claim lacks merit. See id. at 515.

The Supreme Court held that the plaintiff in Swierkiewicz v. Sorema N.A. sufficiently alleged claims of wrongful termination on account of his national origin and on account of his age in violation by detailing the events leading to his termination, providing the relevant dates, and including the ages and nationalities of the persons involved in his termination and as such, gave the defendant fair notice of his claims and the grounds upon which they rested. See id. at 515. See also United States v. Gustin-Bacon Div. Certain-Teed Prod. Corp., 426 F.2d 539, 542 (10th Cir. 1970)("We find no suggestion in the Civil Rights Act of 1964 nor in the debates prior to its enactment, which supports appellees' contention that Congress intended to require the Attorney General to revert to a detailed pleading of evidentiary matters."). On the other hand, the Tenth Circuit determined that Swierkiewicz v. Sorema N.A. was inapplicable in a case where it was determining whether the plaintiff's § 1981 claim was sufficient under rule 12(b)(6) of the Federal Rules of Civil Procedure; and "not whether the district court dismissed [the plaintiff]'s § 1981 claim because he failed to allege a prima facie case of discrimination under the McDonnell Douglas framework." Mahon v. American Airlines, Inc., 71 Fed.Appx. 32, 35 (10th Cir. 2003). See United States v. Gustin-Bacon Div. Certain-Teed Prod. Corp., 426 F.2d at 543 (stating that "Congress meant . . . that a pattern or practice of racial discrimination in employment exists, must be reflected on the face of the complaint.").

## LAW ON ADDING CLAIMS WHILE
## MOTION FOR SUMMARY JUDGMENT IS PENDING

Permission to amend a complaint after the permissive period is within the discretion of the trial court. See Orr v. City of Albuquerque, 417 F.3d 1144, 1153 (10th Cir. 2005). In See Orr v. City of Albuquerque, the Tenth Circuit explained:

> The female Plaintiffs raised a due process claim, for the first time, in their response to Defendants' summary judgment motion. If we allow this practice in this case, Defendants will be substantially prejudiced. The female Plaintiffs' reference to due process, which happens to be in a footnote, is insufficient to put Defendants on notice of what type of due process violation is being alleged, procedural or substantive, requiring additional discovery and preparation. Also, the burden on Defendants for defending a claim for violation of one's due process rights is sufficiently different from defending Plaintiffs' equal protection claim.

Id. "That general rule, which is based on the liberal pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, does not, however, 'permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case.'" Id. (quoting Evans v. McDonald's Corp, 936 F.2d 1087, 1090-91 (10th Cir. 1991)). See Orr v. City of Albuquerque, 417 F.3d at 1153 (precluding the plaintiffs from raising a due process claim for the first time in their response to defendants' motion for summary judgment because the plaintiffs' reference in a footnote to a due process violation is insufficient to put the defendants on notice of a "what type of due process claim is being alleged, procedural or substantive, requiring additional discovery and preparation."); Evans v. McDonald's Corp., 936 F.2d at 1091 (refusing to allow the plaintiff to raise a new claim for relief in her response to the defendant's motion for summary judgment even if the new claim was based upon the same factual scenario as the old claims because it was sufficiently unique from the previous claims to cause substantial prejudice to the defendant). See Trujillo v. Bd. of Educ. of the Albuquerque Public Schools, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2296955, at * 4 (June 5, 2007)(quoting Wakeen v. Hoffman House, Inc., 724 F.2d 1238,

1244 (7th Cir.1983)("'It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined.'"); <u>Diaz v. D&D Southwest, Inc.</u>, No. CIV 06-1024 JBACT, 2007 WL 2219443, at * 1 (May 14, 2007)(Browning, J.)(quoting <u>Gohier v. Enright</u>, 186 F.3d 1216, 1218 (10th Cir.1999)(noting that "'[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal. The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim.'").

<u>**ANALYSIS**</u>

Because the Court finds that Negrete's violations of rule 26(a) of the Federal Rules of Civil Procedure in designating Montoya, Franco, Rodriguez, and Opoza does not significantly prejudice Maloof Distributing, it will not strike Eddie Montoya's affidavit from Negrete's Response to Maloof Distributing's summary judgment motion, nor preclude those witnesses from testifying at trial, as a sanction under rule 37(c). The Court believes that any prejudice to Maloof Distributing is minimal and can be cured by additional deposition. On the other hand, the Court will not permit Negrete to amend his Complaint to include a hostile work environment claim, because he did not allege a hostile work environment in accordance with the requirements of rule 8 and of Tenth Circuit case law and it is not proper for him to raise a new claim in the summary judgment stage; to permit such a belated claim would cause substantial prejudice to Maloof Distributing that cannot be readily cured or mitigated.

**I.     THE COURT WILL NOT STRIKE MONTOYA'S AFFIDAVIT FROM NEGRETE'S RESPONSE TO MALOOF DISTRIBUTING'S MOTION FOR SUMMARY JUDGMENT.**

Maloof Distributing asserts great prejudice in not being given the opportunity to depose Montoya before the affidavit being submitted as an exhibit to Negrete's Response to its motion to

dismiss.  See Maloof Distributing's motion to strike, at 4.  "Defendant did not have the opportunity to depose the affiant and is now effectively rendered speechless to the allegations contained in his affidavit."  Id.  Maloof Distributing additionally argues that, because the discovery deadline is now closed, it is unable to depose them or investigate their assertions.  See id.

Generally there is minimal prejudice if the party still has an opportunity to depose the recently designated witness.  See Moss v. Feldmeyer, 979 F.2d 1454, 1459 (10th Cir. 1992)(holding no prejudice or surprise existed when plaintiff was aware of experts' testimony because one had been designated two weeks before trial, she received a summary of both experts' reports before their trial testimony, both were available for discovery before testifying, and the plaintiff chose only to depose one of the experts.).  The Tenth Circuit has advised district courts that the timing of the introduction of testimony "in relation to commencement of trial is an important element in analyzing whether [it] would cause prejudice or surprise."  Davey v. Lockheed Martin Corp., 301 F.3d 1204, 1210-11 (10th Cir. 2002).  Although Negrete disclosed Eddie Montoya's name to Maloof Distributing after the discovery deadline of July 16, 2007, Negrete represents that he informed Maloof Distributing as soon as he became aware of Montoya on August 13, 2007.  See Tr. at 11:14-15 (Dixon).

Negrete's presentation of Montoya's affidavit in his Response to Maloof Distributing's summary judgment motion is either not prejudicial or is minimally prejudicial to Maloof Distributing.  Negrete has already offered to cure some of the prejudice to Maloof Distributing by allowing it to depose  Montoya and Rodriguez.  See Tr. at 11:16-17 (Dixon).  Maloof Distributing has asked for permission from the Court to depose all four witnesses identified by Negrete.  See October 31 Tr. at 6:12-18 (Court & Mower).  The Court believes that it can cure any prejudice by allowing this additional discovery.

-25-

There is no indication that Montoya's affidavit will disrupt the trial in this matter, or that Negrete or his counsel acted out of bad faith or willfulness in using an affidavit from Montoya. Although untimeliness can weigh against the party that violated a pretrial rule, see Davey v. Lockheed Martin Corp., 301 F.3d at 1212, untimeliness alone is insufficient to justify striking Montoya's affidavit from Negrete's Response.   The Court believes that, under the circumstances, it is best to leave the affidavit, and mitigate any harm to Maloof Distributing with a deposition.

It is true that a deposition of Montoya, at this late date, may not help Maloof Distributing much with the harm the affidavit may cause to the motion for summary judgment.  On the other hand, it may be that nothing can prevent there from being factual issues and thus the need for a trial. Rather than sacrificing the truth and excluding the affidavit on the speculative chance that a trial could be avoided, it appears that the better course would be to leave the affidavit and see what importance, if any, the affidavit will have in deciding the motion for summary judgment.

## II.     THE COURT WILL NOT PROHIBIT MONTOYA, FRANCO, RODRIGUEZ, NOR OPOZA FROM TESTIFYING AT TRIAL.

The prejudice, if any, suffered by Maloof Distributing by the testimony of Montoya, Franco, Rodriguez, and Opoza is minimal, because Negrete represents that he informed Maloof Distributing as soon as he became aware of Montoya on August 13, 2007.  See Tr. at 11:14-15 (Dixon).  In addition, Negrete represents that Franco was a former employee of Maloof Distributing's.  See Plaintiff Jose Negrete's Response to "Defendant Maloof Distributing, L.L.C.'s Motion to Strike," at 1, filed Oct. 8, 2007 (Doc. 115); Burks v. Oklahoma Publishing Company, 81 F.3d at 979 (holding that there was no prejudice to the defendants because the plaintiff's co-worker's proposed testimony would not have introduced any new issues and if there was surprise or prejudice, and the defendants could have easily cured any prejudice because the proposed witness was one of

defendant's employees whom they could have interviewed or deposed without difficulty).  The prejudice, if any, to Maloof Distributing is curable or can be mitigated, because Negrete has already offered to cure some of the prejudice to Maloof Distributing by allowing it to depose  Montoya and Rodriguez.  See Tr. at 11:16-17 (Dixon).  Maloof Distributing has asked permission from the Court to depose all four witnesses identified by Negrete.  See October 31 Tr. at 6:12-18 (Court & Mower).  The Court believes such additional discovery is doable and reasonable.

There is no realistic threat of disruption to the trial in this matter because of the testimony of Montoya, Franco, Rodriguez, and Opoza, because their testimony is not surprise testimony in the middle of trial.  See Smith v. Ford Motor Co., 626 F.2d at 799 (holding that introduction of testimony of an expert in the midst of trial created a significant disruption because it prevented an adjournment under the circumstances, and proper rebuttal and impeachment "would have required the consultation of other experts, and perhaps, enlistment of new personnel or empirical data."); Moss v. Feldmeyer, 979 F.2d at 1459 (holding no disruption of trial was threatened when the defendants' experts and reports were made available to the plaintiff before their testimony.).  Although untimeliness can weigh against the party that violated a pretrial rule, see Davey v. Lockheed Martin Corp., 301 F.3d at 1212 , there is no indication that Negrete or his counsel acted out of bad faith or willfulness in designating these witnesses.  See Smith v. Ford Motor Co., 626 F.2d at 799-800. (noting that while bad faith or willfulness "may prove aggravated circumstances, this would not necessarily create greater prejudicial impact than a negligent act not in conformity with pretrial procedure.").   The Court will not impose a rule 37(c)  sanction, and will not prohibit the testimony Montoya, Franco, Rodriguez, or Opoza.

III.   **THE COURT WILL NOT PERMIT NEGRETE TO AMEND HIS COMPLAINT AT THE SUMMARY JUDGMENT STAGE TO INCLUDE A CLAIM FOR HOSTILE WORK ENVIRONMENT.**

There is some tension between the notice pleading system, based upon the liberal pleading requirements of rule 8, and providing fair notice to defendants of claims being pursued by plaintiffs. While the Court should be mindful not to turn litigation into a game of traps for the plaintiff, it should not, on the other hand, allow the plaintiff to surprise a defendant on the eve of trial with new claims. Here, the Court does not believe that the plaintiff has given the defendant fair notice that the claim of hostile work environment was one of the claims that he was pursuing.

A.   **NEGRETE DID NOT PROPERLY ALLEGE A HOSTILE ENVIRONMENT CLAIM IN HIS COMPLAINT.**

Under notice pleading, a plaintiff's short and plain statement in the complaint "must simply give the defendant fair notice of what the defendant's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. at 513. The Tenth Circuit has interpreted this requirement to mean "allegations suggesting that the Plaintiff[ ] worked in an environment permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive that it altered [his] employment conditions and created an abusive working environment." Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. at 464. See Mahon v. American Airlines, Inc., 71 Fed.Appx. at 35 (determining that Swierkiewicz v. Sorema N.A. was inapplicable in a case where the issue was whether the plaintiff's § 1981 was sufficient under rule 12(b)(6) of the Federal Rules of Civil Procedure, and "not whether the district court dismissed [the plaintiff]'s § 1981 claim because he failed to allege a prima facie case of discrimination under the McDonnell Douglas framework.").

Negrete did not include a plain and short statement in his Complaint sufficient to put Maloof Distributing on notice that he intended to bring a hostile environment claim. Even under a liberal

construction, Negrete's complaint contains no language in it that allege a workplace environment "permeated with with discriminatory intimidation, ridicule, and insult so severe or pervasive that it altered [his] employment conditions and created an abusive working environment." Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. at 464. See Complaint at 1 (stating that the Complaint is for "Employment Discrimination, Violation of 42 U.S.C. § 1981, Breach of Express Contract, Breach of Implied Contract, and Prima Facie Tort"); id. ¶ 24, at 4-5 ("Defendant intentionally discriminated against Plaintiff on the basis of his race in terminating his contract and in the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship with his employer.").

A common sense reading of the complaint's title and three factual allegations is that Negrete is alleging discrimination, not hostile work environment. Negrete's allegations do not appear to rise to the level of that in Shuab v. Newton Wal Co./UCAC, which alleged "an intimidating, hostile and offense environment" and which the Tenth Circuit found to be inadequate. Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. at 464. Negrete did not allege in his complaint that any alleged racial harassment "was pervasive or severe enough to alter the terms, conditions, or privilege of employment." Bloomer v. United Parcel Serv., Inc., 94 Fed.Appx. at 825 (internal quotations omitted). What distinguishes a discrimination claim under 42 U.S.C. § 1981 and a claim of hostile environment is the presence of pervasiveness "or environment permeated with discriminatory intimidation, ridicule, and insult so severe or pervasive that it altered [his] employment conditions and created an abusive working environment." Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. at 464. Compare with Martin v. Central States Emblems, Inc., 150 Fed.Appx. at 858 ("To establish a prima facie case of termination on the basis of race, a plaintiff must show that (1) he is a member of a protected class; (2) he is qualified for the job and was performing the job satisfactorily; and (3)

he was terminated under circumstances giving rise to an inference of discrimination.").

The caselaw indicates that the McDonnell-Douglas burden-shifting analysis is most appropriate for determining motions for judgment and plays little or no role at trial.  See e.g., Johnson v. California, 545 U.S. 162, 171 n. 7 ("the McDonnell Douglas framework 'can involve no credibility assessment' because 'the burden-of-production determination necessarily precedes the credibility-assessment stage,' and that the burden-shifting framework triggered by a defendant's prima facie case is essentially just 'a means of "arranging the presentation of evidence"'")(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509-510 and n.3 (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988)); Elmore v. Capstan, Inc., 58 F.3d 525, 530 n. 7 (10th Cir. 1995)("[T]he purpose of the sequential burden-shifting analysis adopted from McDonnell Douglas is to provide a basic order of presentation of proof so the controversy can be brought into focus.  It was not intended to provide a ritualistic formula for what ultimately is a straightforward trial about motive.").

Even if, however, Negrete's Complaint survives the motion for summary judgment, the trial of the discrimination claim would look different than the trial of a hostile work environment claim. The jury instructions for discrimination claims under § 1981 and a claim of hostile environment because of racial harassment are distinct.  See Model Civ. Jury Instr. 3rd Cir. 6.1.1 (2007).  The United States Court of Appeals for the Third Circuit describes the "[e]lements of a Section 1981 claim -- Disparate Treatment -- Mixed-Motive" to include: (i) the defendant terminated plaintiff; (ii) the plaintiff's race was a motivating factor in defendant's decision.  See Model Civ. Jury. Instr. 8th Cir. 5.21B (2005)(describing elements of race discrimination under 42 U.S.C. § 1981: (i) defendant discharged plaintiff; and (ii) plaintiff's race was a determining factor in defendant's decision); Pattern Civ. Jury Inst. 11th Cir. FI 1.3.1 (2005)(describing the elements of race

discrimination claim under 42 U.S.C. § 1981: (i) "that the plaintiff was . . . discharged from

employment . . . by the defendant; and [ii] [t]hat the plaintiff's race was a substantial or motivating

factor that prompted the Defendant to take that action.").In contrast, the Third Circuit gives the

following instruction describing the "[e]lements of a Section 1981 Claim -- Harassment -- Hostile

Work Environment -- Tangible Employment Action":

> First: [Plaintiff] was subjected to [describe alleged conduct or conditions giving rise
> to plaintiff's claim] by [names].

> Second: [Names] conduct was not welcomed by [plaintiff].

> Third: [Names] conduct was motivated by the fact that [plaintiff] is [race].

> Fourth: The conduct was so severe or pervasive that a reasonable person in
> [plaintiff's] position would find [plaintiff's] work environment to be hostile or
> abusive. This element requires you to look at the evidence from the point of view of
> a reasonable [member of plaintiff's race] reaction to [plaintiff's] work environment.

> Fifth: [Plaintiff] believed [his/her] work environment to be hostile or abusive as a
> result of [names] conduct.

> Sixth: [Plaintiff] suffered an adverse "tangible employment action" as a result of the
> hostile work environment; a tangible employment action is defined as a significant
> change in employment status, such as hiring, firing, failing to promote, reassignment
> with significantly different responsibilities, or a decision causing significant change
> in benefits.

Model Civ. Jury Instr. 3rd Cir. 6.1.3 (2007).   See Fed. Civ. Jury Instr. 7th Cir. 3.04

(2005)(explaining that plaintiff "must prove seven things by a preponderance of the evidence" to

prove he or she was racially harassed at work: (i) the plaintiff was subjected to alleged conduct; (ii)

"[t]he conduct was unwelcome;" (iii) the conduct occurred because Plaintiff was "[e.g., race/sex]";

(iv) "[t]he conduct was sufficiently severe or pervasive that a reasonable person in plaintiff's

position would find plaintiff's work environment to be hostile or abusive;" (v) "[a]t the time the

conduct occurred, Plaintiff believed that the conduct made his work environment hostile or abusive;"

(vi) "[d]efendant knew or should have known about the conduct; and" (vii) "[d]efendant did not take reasonable steps to [correct the situation]/[prevent harassment from recurring].")(alterations and emphasis in the original); Model Civ. Jury Instr. 8th Cir. 5.42 (2005)(requiring the plaintiff making a claim for "Harassment (By Supervisor With No Tangible Employment Action) Essential Elements" to prove by a preponderance of the evidence that "[i], plaintiff was subjected to (describe the alleged conduct or conditions giving rise to the plaintiff's claim; and [ii] such conduct was unwelcome; and [iii] such conduct was based on a plaintiff's [(sex/gender)(race)(color)(national origin)(religion)(age)(disability)]; and [iv] such conduct was sufficiently severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be [(hostile)(abusive)]; and [v], at the time such conduct occurred and as a result of such conduct, plaintiff believed [(his/her)] work environment to be [(hostile)(abusive)].""); Model Civ. Jury Inst. 8th Cir. 5.43 (2005)(requiring the plaintiff making a claim for "Harassment (By Nonsupervisor) Essential Elements" to prove by a preponderance of the evidence "[i], plaintiff was subjected to (describe alleged conduct or conditions giving rise to plaintiff's claim); and [ii], such conduct was unwelcome; and [iii] such conduct was based on plaintiff's [(sex/gender)(race)(color)(national origin)(religion)(age)(disability)]; and [iv] such conduct was sufficiently severe or pervasive that a reasonable person in plaintiff's position would find plaintiff's work environment to be [(hostile)(abusive)]; and [v], at the time such conduct occurred and as a result of such conduct, plaintiff believed [(his)(her)] work environment to be [(hostile)(abusive)]; and [vi], defendant knew or should have known of the (describe alleged conduct or conditions giving rise to plaintiff's claim); and [vii], defendant failed to take prompt and appropriate corrective action to end the harassment.").

Negrete relies heavily upon his responses to Maloof Distributing's interrogatories to argue he properly raised a hostile environment claim.  See Tr. at 14:5-7 (Dixon); Clerk's Minutes, filed

Oct. 9, 2007 (Doc. 118), Exhibit 1, Plaintiff Jose Negrete's Answers to "Defendant Maloof Distributing, L.L.C.'s First Set of Interrogatories to Plaintiff Jose Negrete," at 4-6.  Assuming that it is proper to look at Negrete's answers to interrogatories to conclude that he put Maloof Distributing on notice of his intention to claim hostile environment, see Orr v. City of Albuquerque, 417 F.3d at 1153 (precluding the plaintiffs from raising a due process claim for the first time in their response to defendants' motion for summary judgment because the plaintiffs' reference in a footnote to a due process violation is insufficient to put the defendants on notice of a "what type of due process claim is being alleged, procedural or substantive, requiring additional discovery and preparation."), the answer does not help his case.   Even when the Court looks at Negrete's answers to Maloof Distributing's interrogatories, the Court cannot reasonably conclude that those answers allege a hostile environment under the Tenth Circuit standard articulated in Shuab v. Newton Wal Co./UCAC, 153 Fed.Appx. at 464.  They simply set forth the evidence that Negrete will rely upon to evaluate his discrimination claim.

### B.   NEGRETE MAY NOT AMEND HIS COMPLAINT TO INCLUDE A HOSTILE ENVIRONMENT CLAIM AT THE SUMMARY JUDGMENT STAGE.

Negrete sought permission to amend his Complaint to include the hostile environment claim for the first time at the October 31, 2007 pretrial conference.  See October 31 Tr. at 8:16-19 (Dixon). The trial is set for December 3, 2007.  Permission to amend outside of the permissive period is within the district court's discretion.  See Orr v. City of Albuquerque, 417 F.3d at 1153.  Even under rule 8's liberal standards, a plaintiff is not permitted to "wait until the last minute to ascertain and refine the theories on which" he intends to build his case.  Evans v. McDonald's Corp, 936 F.2d at 1090-91.  It is inappropriate for a plaintiff to seek to raise new claims at the summary judgment stage, because it would cause substantial prejudice, see  See Orr v. City of Albuquerque, 417 F.3d

-33-

at 1153; <u>Evans v. McDonald's Corp.</u>, 936 F.2d at 1091, to Maloof Distributing because the deadlines which have all passed would require re-opening were Negrete allowed to assert a claim for hostile work environment.  <u>See</u> Defendant Maloof Distributing, L.L.C's Memorandum in Support of its Motion to Strike, at 6, filed Oct. 2, 2007 (Doc. 114-2).

Adding a claim of hostile work environment is not easily cured.  It is not a matter of one more deposition being taken.  All discovery might have to be redone and all people re-deposed. The Court declines to exercise its discretion to allow Negrete to amend his Complaint to include a claim of hostile environment at this late date.

**IT IS ORDERED** that the Defendant's Motion to Strike is granted in part and denied in part. The Court will not strike Eddie Montoya's affidavit from Negrete's Response to Maloof Distributing's Motion for Summary Judgment.  The Court will not prohibit Montoya, Franco, Rodriguez, and Opoza from testifying at trial.  Maloof Distributing will be permitted to take the depositions of Eddie Montoya, John Franco, Randy Rodriguez, and Edmund Opoza.  The Court will not permit Negrete to raise a new claim of hostile work environment at trial or amend his complaint to include it.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Eric D. Dixon
Attorney and Counselor at Law, P.A.
Portales, New Mexico

*Attorney for the Plaintiff*

Frederick M. Mower
Sanchez, Mowrer & Desiderio, P.C.
Albuquerque, New Mexico

*Attorneys for the Defendant*