IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOSE NEGRETE,

       Plaintiff,

vs.                                                                    No. CIV 06-0338 JB/LFG

MALOOF DISTRIBUTING L.L.C.,
A New Mexico Limited Liability Company,

       Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) Defendant Maloof Distributing, L.L.C.'s

Motion in Limine, filed November 15, 2007 (Doc. 126); and (ii) Defendant Maloof Distributing,

L.L.C.'s Motion to Strike Plaintiff's Affidavit Attached to His Response to Motion in Limine, filed

November 27, 2007 (Doc. 144).  The Court held a hearing on the motions on November 27, 2007.

The primary issues are: (i) whether the Court should exclude testimony that Joe Samuels and Bill

James allegedly made derogatory comments to Plaintiff Jose Negrete, and to Eddie Montoya, and

to Randy Rodriguez; and (ii) whether the Court should preclude Negrete from testifying about

recollections that he has had since his deposition that are allegedly inconsistent with his deposition.

For the reasons stated at the hearing, and for reasons consistent with those stated, the Court will

deny the motions.

### PROCEDURAL BACKGROUND

In his deposition, Negrete testified that Joe Samuels was the only Maloof Distributing

employee that had called Negrete derogatory names.  See Defendant Maloof Distributing, L.L.C.'s

Memorandum in Support of its Motion in Limine ("Memo."), filed November 15, 2007 (Doc. 126-

2), Exhibit A, Deposition of Jose Negrete (taken June 6, 2007) ("Negrete Depo.") at 52:25-53:14. In an Affidavit that Negrete filed in opposition to Maloof Distributing's motion for summary judgment, Negrete contends that Bill James, a former Maloof Distributing employee, also called him derogatory names.  <u>See</u> Motion, Exhibit B, Affidavit of Jose Negrete (executed August 26, 2007)("Negrete Aff.") ¶ 21, at 5.

On November 15, 2007, Maloof Distributing filed a motion in limine to exclude any statements that Samuels and James allegedly made.  <u>See</u> Defendant Maloof Distributing, L.L.C.'s Motion in Limine ("Motion"), filed November 15, 2007 (Doc. 126).  Maloof Distributing argues that neither James nor Samuels participated in the decision to terminate Negrete, and thus, their statements do not "provide a basis for racial animus to demonstrate the basis of [Negrete's] termination was pretextual and based on intentional discrimination towards him."  Motion ¶ 10, at 2.  Maloof Distributing contends that the statements by Samuels and James are irrelevant under rule 402 of the Federal Rules of Evidence.  <u>See</u> Memo. at 3.  Maloof Distributing also contends that, even if the statements are relevant, the danger of unfair prejudice and confusion of issues substantially outweighs their probative value.  <u>See</u> Memo. at 4 (citing Fed. R. Evid. 403). Specifically, Maloof Distributing contends that the statements are not evidence of pretext nor of racial animus.  <u>See</u> Memo. at 4-8.

Negrete responded to Maloof Distributing's motion on November 21, 2007.  <u>See</u> Plaintiff's Response to "Defendant Maloof Distributing, L.L.C.'s Motion in Limine" ("Response"), filed November 21, 2007 (Doc. 133).  Negrete represents that he "has now remembered that other individuals either made disparaging remarks or were present when such disparaging remarks were made, to wit:  Bill James (Clovis Supervisor), and Joe Samuels (semi-truck driver from Roswell), sometimes in the presence of Bob Bolin."  Response ¶ 2, at 1.  Negrete represents that Samuels and

James made racially offensive comments in front of Negrete's supervisor, Bob Bolin, and that "Bolin would laugh and did not take corrective action."  Response ¶ 3, at 1; Response, Exhibit 1, Affidavit of Jose Negrete (executed November 21, 2007)("Second Negrete Aff.") ¶ 2, at 1.

Negrete further represents that Bolin was an active participant during the meeting to terminate Negrete's employment, and that Bolin provided Negrete's social security number and other information on the termination papers of December 20, 2004.  See Response ¶ 3, at 2; Second Negrete Aff. ¶ 8, at 2.  Negrete also represents that Bolin "was a vocal participant in the meeting." Second Negrete Aff. ¶ 8, at 2.  Negrete contends that a memorandum which Jim Russell prepared at the time of his termination indicated that Bolin was part of the group decision to terminate him. See Response ¶ 3, at 2; Response, Exhibit 2, Memorandum by Jim Russell to Laura Schwebach (dated December 20, 2004) at 1.

Negrete contends that the "racially abusive statements made by both Bill James and Joe Samuels is [sic] relevant for a number of reasons."  Plaintiff Jose Negrete's Response Memorandum in Opposition to "Defendant Maloof Distributing, L.L.C.'s Memorandum in Support of its Motion in Limine" ("Response Memo."), filed November 21, 2007 (Doc. 134).  Negrete contends that, because some of the statements were made in front of Bolin and because Maloof Distributing had a "No Harassment Policy," the statements are relevant to showing pretext.  Response Memo. at 3-4. Negrete contends that the comments are admissible to demonstrate that Maloof Distributing did not follow its own written policies and procedures.  See Response Memo. at 7.  In other words, because Maloof Distributing ignored its policy on one occasion, it may have ignored its policy on other occasions.  Negrete also contends that the statements are relevant to show that Bolin used Russell as a cat's paw to fire him.  See Response Memo. at 4 (citing E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 487 (10th Cir. 2006)).  Finally, Negrete contends that the comments

may be used to impeach James' contentions that he made no such comments.  See Response Memo. at 7.

On November 27, 2007, Maloof Distributing filed a motion to strike Negrete's second affidavit.  See Defendant Maloof Distributing, L.L.C.'s Motion to Strike Plaintiff's Affidavit Attached to His Response to Motion in Limine ("Motion to Strike"), filed November 27, 2007 (Doc. 144).  Maloof Distributing contends that the Court should strike Negrete's second affidavit should be stricken because it presents "testimony which is markedly different than that presented during discovery [and] may be stricken during trial on the grounds that it is confusing, prejudicial, and creates unfair surprise . . . ."  Motion to Strike at 3 (citing Dunlap v. City of Oklahoma, 12 Fed.Appx. 831 (10th Cir. 2001)).

The Court held a hearing on this matter on November 28, 2007.  The Court stated that it was inclined to deny the motion to strike and allowed Maloof Distributing to incorporate its arguments from its motion to strike into its arguments for its motion in limine.  See Transcript of Hearing (taken November 28, 2007)("Tr.") at 11:14-18 (Court).[1]  Maloof Distributing contends that the testimony of Montoya and Rodriguez are irrelevant to Maloof Distributing's decision to terminate Negrete, because Montoya and Rodriguez were at Maloof Distributing when Negrete was fired.  See Tr. at 13:2-18 (Mower).  Maloof Distributing contends that there is no nexus between the derogatory comments and the decision to terminate Negrete.  See Tr. at 15:17-19 (Mower).  Maloof Distributing contends that, because James had retired and left Maloof Distributing two months before the decision to terminate Negrete,  there is no nexus between anything James did regarding Montoya and/or Rodriguez and the decision to terminate Negrete.  See Tr. at 15:20-16:6 (Mower).  Maloof

_____

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Distributing further contends that the probative value of the evidence at issue is substantially outweighed by its possible prejudicial impact on the jury. <u>See</u> Tr. at 16:16-18 (Mower). Maloof Distributing argues that the prejudice created by the evidence is a "complete surprise." Tr. at 20:16-17 (Mower). Maloof Distributing contends that the first time it was made aware that Negrete was alleging that there was a nexus between Bolin's observations of the alleged discriminatory conduct by Samuels and James and Bolin's participation in the termination of Negrete was when Negrete filed his second affidavit. <u>See</u> Tr. at 21:11-24 (Mower).

Negrete contends that Russell relied upon Bolin's input to make the decision to terminate him. <u>See</u> Tr. at 23:16-19 (Court & Dixon). Negrete's theory is that the racial animus of Bolin came into the decision to terminate Negrete. <u>See</u> Tr. at 23:20-22 (Dixon). Negrete further contends that the evidence regarding racist jokes and comments is relevant to pretext because James and Samuels were not disciplined for making "racially charged statements and actions towards Mr. Negrete." Tr. at 23:24-25 (Dixon). Negrete contends the evidence is relevant to demonstrate pretext. <u>See</u> Tr. at 25:14-15 (Dixon). Negrete also states that his first affidavit specifically contended that Bolin was present during the racist statements made by James and Samuels, and therefore there is no surprise to Maloof Distributing. <u>See</u> Tr. at 25:16-23 (Dixon). Negrete also notes that Maloof Distributing did not object at any time to the statements in Negrete's first affidavit. <u>See</u> Tr. at 25:23-24 (Dixon).

## RULE 402

"All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402. <u>See</u> <u>Gardetto v. Mason</u>, 201 F.3d 447 (Table), No. No. 98-8025, 1999 WL 1188838 at *6 (Brorby, J.)("Thus, the threshold to admissibility is relevance. The scope of relevancy is bounded only by the

liberal standard of Rule 401, which provides that evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Denison v. Swaco Geolograph Co., 941 F.2d 1416, 1423-24 (10th Cir. 1991)("Rule 401 defines the term "relevant evidence," and Rule 402 provides that relevant evidence is admissible and irrelevant evidence is not. Rule 403 limits the admission of relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The trial court's admission or exclusion of evidence under these rules is reviewed for an abuse of discretion.").

## RULE 403

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "[T]he decision to exclude evidence under Rule 403 is within the sound discretion of the trial court, and will not be reversed . . . absent a clear abuse of discretion." Dunlap v. City of Oklahoma City, 12 Fed.Appx. at 834. In Dunlap v. City of Oklahoma City, the trial court excluded the testimony of two witnesses because the plaintiff's characterization of their testimony was "markedly different" than her original proffer. 12 Fed.Appx. at 833. The plaintiff originally proffered that the witnesses would testify only to the employer's pattern of racial discrimination. See id. The trial court found that the witnesses' testimony would be irrelevant to the plaintiff's claim of intentional discrimination that did not include a claim of hostile-work environment or a pattern of intentional discrimination against other employees. See id. On her motion for reconsideration, the plaintiff contended for the first time that the witnesses had direct knowledge of the employer's

reduction of work force and its application to her.  See id.  The district court excluded the witnesses, because "the nature of their proposed testimony had changed to such an extent that permitting them to testify would cause unfair surprise to the [employer]."  Id. at 834.

## LAW ON DISCRIMINATION

In E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, the United States Court of Appeals for the Tenth Circuit explained that employers may be held liable for subordinate bias:

> In the employment discrimination context, "cat's paw" refers to a situation in which a biased subordinate, who lacks decision-making power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action.  The "rubber stamp" doctrine has a more obvious etymology, and refers to a situation in which a decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate.

450 F.3d at 484.  The Tenth Circuit noted there is a split in the circuits regarding "the level of control a biased subordinate must exert over the employment decision."  Id. at 486.  The Tenth Circuit rejected a standard that would "contemplate[ ] that any influence, the reporting of any factual information, or any form of other input by a biased subordinate renders the employer liable so long as the subordinate may have affected the employment action." Id. (internal quotations omitted).  The Tenth Circuit noted that "[s]uch a weak relationship between the subordinate's actions and the ultimate employment decision improperly eliminates a requirement of causation."  Id. at 486-87.  Instead, the Tenth Circuit adopted a standard where "the issue is whether the biased subordinate's discriminatory reports, recommendations, or other actions caused the adverse employment action." Id. at 487 (emphasis added).  See Gurule v. San Juan County Government, 376 F.Supp.2d 1195, 1203 (D.N.M. 2005)(Browning, J.)(holding that the plaintiff failed to offer any evidence to support his opinion that his employer's proffered non-discriminatory reason was pretext because there was no evidence to demonstrate a causal connection between his termination in 2002 and the departure

of a different employee in 1994)(citing <u>Shorter v. IGC Holdings, Inc.</u>, 118 F.3d 1204, 1209-10 (10th Cir. 1999), <u>overruled on other grounds by</u> <u>Desert Palace, Inc. v. Costa</u>, 539 U.S. 90, 98-102 (2003)(recognizing that derogatory "comments may serve as circumstantial evidence of discrimination, [but] the plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee.")(alterations in original)

## ANALYSIS

There is enough evidence of a causal connection between the alleged racist comments that James and Samuels made, to the decision to terminate Negrete to allow a reasonable jury to make the inference that Russell's decision to terminate Negrete was tainted by advice he was receiving from subordinates.  <u>See</u> <u>E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles</u>, 450 F.3d at 487 (noting "the issue is whether the biased subordinate's discriminatory reports, recommendations, or other actions caused the adverse employment action."); <u>Shorter v. IGC Holdings, Inc.</u>, 118 F.3d at 1209-10 (recognizing that derogatory "comments may serve as circumstantial evidence of discrimination, [but] the plaintiff must still show some nexus between the statements and the defendant's decision to terminate the employee.").  Negrete contends that they show Maloof Distributing ignored its own polices and that Bolin had a racist bias when he counseled Russell. The comments, thus,  are relevant to the issues of pretext and intent, and, therefore, admissible under rule 402.  <u>See</u> Fed. R. Evid. 402 ("All relevant evidence is admissible . . . .").

To the extent that Negrete's affidavits and the theories therein present any prejudice, it is not unfair prejudice.  Any prejudice is manageable and can be handled in cross examination by Maloof Distributing.  Under rule 403, Negrete's affidavits and the testimony of  Montoya and Rodriguez have "probative value [that] is [not] substantially outweighed by the danger of unfair prejudice" to Maloof Distributing.  Fed. R. Evid. 403.  Negrete is allowed to use the normal ways of proving

pretext, including Maloof Distributing's inconsistency in enforcing its company policies, and the testimony presented by Rodriguez and Montoya is relevant to the issues of intent and pretext. See Green v. New Mexico, 420 F.3d 1189, 1193 (10th Cir. 2005)(noting that a plaintiff typically shows pretext in three ways: "[i] with evidence that the defendant's stated reason for the adverse employment action was false; [ii] with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or [iii] with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.").

     **IT IS ORDERED** that Defendant Maloof Distributing, L.L.C.'s Motion to Strike Plaintiff's Affidavit Attached to His Response to Motion in Limine and Defendant Maloof Distributing, L.L.C.'s Motion in Limine are denied. Negrete's second affidavit will not be stricken, but Maloof Distributing is free to raise all its arguments in support of its motion in limine.  The statements allegedly made by James and Samuels are not excluded.  Montoya and Rodriguez are not prohibited from testifying regarding any alleged statements made by James or Samuels.  Negrete is not prohibited from testifying to matters he raised in his second affidavit.

                              _____
                              UNITED STATES DISTRICT JUDGE

*Counsel:*

Eric D. Dixon
Attorney and Counselor at Law, P.A.
Portales, New Mexico

     *Attorney for the Plaintiff*

Frederick M. Mower
Sanchez, Mowrer & Desiderio, P.C.
Albuquerque, New Mexico

*Attorneys for the Defendant*